UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ANTHONY MARTIN,                    )
                                   )
                    Plaintiff,     )
                                   )
             v.                    )      No. 2:23-cv-00078-JPH-MKK
                                   )
CHRISTOPHER HOLCOMB Lt., *et al.*, )
                                   )
                    Defendants.    )

**ORDER GRANTING DEFENDANTS' MOTION FOR SANCTIONS,
DISMISSING ACTION WITH PREJUDICE, ENTERING FILING RESTRICTION
ON PLAINTIFF, AND DIRECTING ENTRY OF FINAL JUDGMENT**

On December 10, 2024, the Court held an evidentiary hearing on the defendants' motion for sanctions, dkt. 162. In this order, the Court renders its findings of fact and conclusions of law, grants the defendants' motion, imposes sanctions (including a filing restriction) on the plaintiff, and directs the entry of final judgment.

## I. Procedural Background

Anthony Martin alleges the defendants violated his Eighth Amendment rights by failing to adequately maintain the plumbing system at Wabash Valley Correctional Facility and respond reasonably when sewage flooded his cell. The defendants moved for summary judgment on April 16, 2024, dkt. 84, and their motion remains pending.

On June 7, 2024, the defendants moved for sanctions against Mr. Martin. Dkt. 106. The subjects of their motion are inmate grievances and requests for interview that Mr. Martin filed in opposition to summary judgment. The

defendants assert that Mr. Martin falsified these documents, either creating them from whole cloth or by altering existing documents.

The Court directed Mr. Martin to respond in writing to the sanctions motion. Dkt. 114. After reviewing the parties' briefing and additional evidence, the Court found material factual disputes and set an evidentiary hearing. Dkt. 144.

That hearing took place on December 10, 2024. Dkt. 165. The parties presented evidence from six witnesses and submitted post-hearing briefs, dkts. 167, 168.

Mr. Martin attached to his post-hearing filing  an affidavit attesting that Ashlynn Gonthier, who testified as a witness at the evidentiary hearing, confessed to him on January 22 that she and other witnesses lied during their testimony at the evidentiary hearing and engaged in other misconduct throughout the litigation. Dkt. 168 at 15–20. The defendants responded, denying the allegations. Dkt. 169. At the Court's request, the defendants supplemented their response with evidence, including declarations from Ms. Gonthier and other witnesses, and video and photographs showing Ms. Gonthier's and Mr. Martin's movements during the time in question. Dkts. 174, 175, 176, 177, 178. Mr. Martin filed a supplemental response on March 19. Dkt. 179.

## II. Legal Standard

A district court has "inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage

misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991)). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776. This finding must be based on a preponderance of the evidence. *Id.* at 777.

"In deciding what measure of sanctions to impose, the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process." *Greviskes v. Universities Rsch. Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) (cleaned up). "Sanctions, including dismissal, must be proportionate to the circumstances. . . . Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (internal citation omitted). "[C]ourts generally have an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct." *Secrease v. Western & Southern Life Ins.*, 800 F.3d 397, 402 (7th Cir. 2015).

The Court may properly exercise its authority to dismiss an action "'when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false.'" *Ramirez*, 845 F.3d at 776 (quoting *Secrease*, 800 F.3d at 401).

> [F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system. If successful, the effort produces an unjust result. Even if it is not successful, the effort

imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly.

*Secrease*, 800 F3d at 402. A "'dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary.'" *Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022) (quoting *Ayoubi v. Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016)). In addition, "[c]ourts have the inherent authority to curb abusive and frivolous litigation by imposing filing restrictions that . . . are tailored to the abuse." *Zielinski v. Wisconsin Lab. & Indus. Rev. Comm'n*, No. 21-3042, 2022 WL 2115300, at *1 (7th Cir. June 13, 2022), *cert. denied*, 143 S. Ct. 2463 (2023), *reh'g denied*, 144 S. Ct. 39 (2023); *see also Support Sys. Int'l v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) ("[A]ny sanction imposed by a federal court for the abuse of its processes be tailored to the abuse.").

### III. Findings of Fact: Challenged Grievances

1.    In their summary judgment motion, the defendants asserted as undisputed material facts that Mr. Martin never submitted grievances, handwritten requests, or other documents related to flooding, wastewater, plumbing, or toilet issues between September 4 and 7, 2021. Dkt. 85, undisputed material facts (UMFs) 46, 48.

2.    In response, Mr. Martin asserts that he submitted grievances dated September 7 and September 10 concerning those issues, but they were returned because he was on grievance abuser status. Dkt. 98 at 20, 23; dkt. 99 at 19–20.

**A.    Challenged Grievance Dated September 7**

3.    Mr. Martin supported this assertion with an inmate grievance dated September 7. Dkt. 98 at 20.

3a.    The September 7 grievance describes backed up toilets in Mr. Martin's cell and unit.

3b.    The September 7 grievance does not have a "RECEIVED" stamp at the top, a staff member's signature at the bottom, or any other indication that it was received by the prison staff.

4.    Mr. Martin also supported his assertion that he submitted a grievance regarding plumbing problems between September 4 and 7 with a "Return of Grievance" dated September 8, 2021. Dkt. 98 at 21.

4a.    The return is addressed to Mr. Martin's name and identifying number.

4b.    The return indicates that a grievance received from Mr. Martin on September 8, 2021, could not be processed because he was on grievance abuser status. Dkt. 98 at 21.

4c.    The return is signed by T. Templeton.

4d.    A handwritten notation at the top of the page states "Received 9-9-21," and the initials "AV" are circled.

5.    Tawni Templeton was a grievance specialist at WVCF in September 2021. Dkt. 103-3 at ¶ 2.

6.    On September 8, 2021, Ms. Templeton received a grievance from Mr. Martin, but it was not the grievance that he submitted in response to the summary judgment motion. *Id.* at ¶ 30.

6a.    This grievance is also dated September 7, 2021, and features Mr. Martin's name and identifying number. Dkt. 103-2 at 5.

6b.    Mr. Martin wrote "* Emergency Grievance *" at the top of the page. *Id.*

6c.    This grievance is stamped "RECEIVED" with a date of September 8. *Id.*

6d.    The word "Abuser" is handwritten in the top left corner of the page. *Id.*

6e.    The true September 8 grievance raises complaints regarding Mr. Martin's outgoing legal mail. *Id.*

 

*Mr. Martin's challenged (left) and actual (right) September 7 grievances.*

7.     Ms. Templeton responded to the September 8 grievance with a grievance return dated September 8. Dkt. 103-3 at ¶¶ 33–34.

7a.     The grievance return attached to Ms. Templeton's affidavit is identical to the return attached to Mr. Martin's summary judgment response except it is stamped "SCANNED" in the top right corner and does not include a handwritten date or initials. Dkt. 103-2 at 6.

7b.     Ms. Templeton testified that she routinely stamped grievances "RECEIVED" after receiving them. Dkt. 165 at 94:18–95:7.



*September 8 grievance returns filed by Mr. Martin (left) and the defendants (right).*

**B.     Challenged Grievance Dated September 10**

8.     Mr. Martin also responded to the summary judgment motion with a grievance dated September 10. Dkt. 98 at 23.

8a.    The September 10 grievance takes issue with the prison staff's alleged rejection of the September 7 grievance. *Id.*

8b.    The September 10 grievance does not have a "RECEIVED" stamp at the top, a staff member's signature at the bottom, or any other indication that it was received by the prison staff.

9.     Mr. Martin also supported his summary judgment response with a "Return of Grievance" dated September 13, 2021. Dkt. 98 at 24.

9a.    The return is addressed to Mr. Martin's name and identifying number.

9b.    The return indicates that a grievance received from Mr. Martin on September 13, 2021, could not be processed because he was on grievance abuser status. Dkt. 98 at 24.

9c.    The return is signed by T. Templeton.

9d.    The return includes a handwritten line or checkmark next to Mr. Martin's cell number.

10.    On September 13, 2021, Ms. Templeton received a grievance from Mr. Martin, but it was not the one he submitted in response to the summary judgment motion. Dkt. 103-3 at ¶ 42.

10a.   This grievance is also dated September 10, 2021, and features Mr. Martin's name and identifying number. Dkt. 103-2 at 7.

10b.   Mr. Martin wrote "* Emergency Grievance *" at the top of the page. *Id.*

10c.   This grievance is stamped "RECEIVED" with a date of September 13. *Id.*

10d.   The true September 10 grievance raises complaints regarding Mr. Martin's outgoing legal mail. *Id.*

 

*Mr. Martin's challenged (left) and actual (right) September 10 grievances.*

11.   Ms. Templeton responded to the September 10 grievance with a grievance return dated September 13. Dkt. 103-3 at ¶¶ 45–56.

11a.  The return attached to Ms. Templeton's affidavit is identical to the return attached to Mr. Martin's summary judgment response except it is stamped "SCANNED" and does not include the handwritten line or checkmark. Dkt. 103-2 at 8.

 

*September 13 grievance returns filed by Mr. Martin (left) and the defendants (right).*

## C.    Additional Grievances

12.    The defendants have also designated as evidence additional grievances Mr. Martin submitted that are dated August 25, September 10, September 13, and September 14, 2021. Dkt. 102-1 at 1, 3, 9, 11.

12a.  All four have corresponding returns signed by Ms. Templeton. *Id.* at 2, 4, 10, 12.

12b.  All four returns note that Mr. Martin was on grievance abuser status. *Id.*

12c. All four grievances are stamped "RECEIVED" on the date Ms. Templeton issued the corresponding return.

12d. Mr. Martin wrote "* Emergency Grievance *" on three of the four grievances. *Id.* at 1, 3, 9.

12e. These grievances allege that an officer came to Mr. Martin's cell and harassed him by calling him a "snitch," he was deprived of two meals on one day, his outgoing mail was mishandled, he was given the wrong lunch and deprived of dinner on a different day, and he was denied information about potential defendants in a lawsuit concerning his medical care and meals. *Id.*

13. The grievances Mr. Martin submitted between August 25 and September 14, 2021, are all written on a version of the grievance form dated April 2017. Dkt. 103-2 at 1, 3, 5, 7, 9, 11. However, the challenged grievances Mr. Martin attached to his summary judgment response are written on a version of the form dated March 2020. Dkt. 98 at 20, 23.



*Comparative form designations and markings between Mr. Martin's challenged September 10 grievance (top) and actual September 13 grievance (bottom).*

14.    Mr. Martin did not disclose the challenged grievances dated September 7 and 10 in discovery or file them with the Court at any time before his summary judgment response. Dkt. 165 at 72:25–73:4.

## D.    Mr. Martin's Credibility and Explanations for the Challenged Grievances

15.    Mr. Martin states in his response to the sanctions motion that he submitted two grievances each on September 7 and 10—the challenged grievances he attached to his summary judgment response and the grievances the defendants attached to their sanctions motion—and received one return for each pair. Dkt. 124 at 4–6.

15a.   This explanation is not credible.

15b.   The defendants' records show that when Mr. Martin submitted two grievances on August 25, 2021, he received two returns, one for each grievance. Dkt. 103-2 at 1–4. This undermines Mr. Martin's contention that he received one return in response to two grievances on September 7 and again on September 10.

15c.   The credibility of Mr. Martin's claim that the September 7 and September 10 grievances are authentic is further undermined by his "one-return-for-two-grievances" theory, which is contradictory. He notes that the September 8 return he filed has a handwritten notation that does not appear on the September 8 return the defendants filed. *See* dkt. 124 at 5; *compare* dkt. 98 at 21 *to* dkt. 103-2 at 6. The implication of Mr. Martin's argument is that he received two grievance returns on September 8, which shows that he submitted two legitimate grievances on September 7. Mr. Martin therefore simultaneously

argues that his two September 7 grievances are legitimate, and he received one joint response to them, *and* that his two September 7 grievances are legitimate because they received distinct responses—both can't be true.

15d. Mr. Martin's story about the September 7 and September 10 grievances is further undermined by the versions of the grievance form used. The six authentic grievances that Mr. Martin submitted in August and September 2021 were on a version of the grievance form dated April 2017. The two grievances relating to the conditions in his cell that Mr. Martin alleged he submitted on September 7 and September 10, 2021, were on a version of the grievance form dated March 2020. The most plausible explanation for the different versions is that Mr. Martin used the newer version of the grievance form (March 2020) when he created the two challenged grievances in 2024 for the purpose of responding to Defendants' motion for summary judgment.

16. Mr. Martin's argument that the absence of "RECEIVED" stamps on the challenged September 7 and 10 grievances shows that he did not falsify those grievances is not persuasive. Dkt. 124 at 6–7.

16a. Mr. Martin supports his argument with several grievance documents that he notes are also not stamped "RECEIVED." Dkt. 117 at 17–31. However, none of these documents appears to have been received by Ms. Templeton, who allegedly received and responded to his two challenged grievances.

16b. Meanwhile, Ms. Templeton's testimony that she routinely stamped grievances "RECEIVED" after receiving them is credible. Dkt. 165 at 94:18–95:7.

Indeed, every grievance for which she submitted a return in August and September 2021 is stamped consistent with her testimony. Dkt. 103-2.

17.    Mr. Martin next addresses why the IDOC did not have copies or records of his September 7 and 10 grievances, despite evidence that IDOC keeps a copy of every grievance filed.   Mr. Martin blames it on a transition in the Indiana Department of Correction's (IDOC) electronic records system that caused records of some grievances to be lost. Dkt. 124 at 8–9. This argument is not persuasive. The IDOC maintained *paper* copies of grievances that were received and returned. *See* dkt. 165 at 75:14–76:2, 77:9–24, 83:23–84:9. Those records include six other grievances submitted by Mr. Martin in August and September 2021, but not the two grievances dated September 7 and September 10, 2021, that he filed in response to summary judgment. Dkt. 103-2.

18.    Mr. Martin testified at the evidentiary hearing that he did not mark the challenged grievances as emergency grievances because he submitted them at the same time as other grievances that he wanted to receive greater priority. Dkt. 165 at 39:23–41:8. The Court does not find this testimony credible.

18a.   Mr. Martin submitted two grievances dated August 25, 2021, and labeled them both as emergencies. Dkt. 103-2 at 1, 3. Mr. Martin does not explain anywhere in the record why it was important to prioritize one grievance over another filed the same day in some instances but not others.

18b.   Mr. Martin testified that he labeled the true September 7 and 10 grievances as emergencies because his right to pursue legal challenges is his "heartbeat" and that a violation of his First Amendment right supersedes any

14

challenge to his Eighth Amendment rights. Dkt. 165 at 39:23—41:8. But Mr. Martin labeled at least three other grievances submitted in August and September 2021 as "Emergency." These grievances concerned alleged Eighth Amendment violations, including being exposed to violence by staff members and denial of meals. Mr. Martin does not credibly explain why he identified those grievances, but not the challenged September 7 and 10 grievances, as "Emergency." Dkt. 103-2 at 1, 3, 9. Indeed, Mr. Martin grieved a dietary issue and an access-to-courts issue on consecutive days and labeled both documents as emergency grievances. *Id.* at 9, 11.

19.    Mr. Martin also testified at the evidentiary hearing that he did not produce the challenged September 7 and 10 grievances in discovery because he has too many legal documents to keep in his cell at one time and did not discover the documents until he "came into a motion to compel in 2:23-cv-58." Dkt. 165 at 55:13–56:10. This testimony lacks credibility and supports an inference that Mr. Martin did not produce the challenged grievances during discovery because they did not exist until he created them to avoid summary judgment.

19a.    The docket in *Martin v. Donovan*, No. 2:23-cv-00058-MPB-MKK, reflects that one motion to compel has been filed, and it was filed by the defendants on September 13, 2024—more than three months after Mr. Martin filed his summary judgment response in this case. *See id.*, dkt. 68. Mr. Martin could not have filed documents in May that he did not discover until he was served with a motion to compel in September.

19b.  *Martin v. Donovan* concerns alleged harassment and physical abuse by officers in February 2021, *see id.* at dkt. 9, six months before the plumbing issues raised in the challenged grievances. Even construing Mr. Martin's testimony more generally, it is difficult to imagine that he discovered grievances about plumbing in September 2021 while sorting through discovery regarding harassment and physical abuse in February 2021.

20.    Finally, Mr. Martin argues in his post-hearing brief that the defendants did not assert the affirmative defense that he failed to exhaust administrative remedies before he filed this case because the complete process was unavailable to him due to his abuser status. Against this backdrop, he argues, it would be against his interest for him to generate false grievances showing that he successfully used the process to present his concerns to the prison staff. Dkt. 168 at 6. This argument is unpersuasive for two reasons.

20a.  First, the grievances Mr. Martin submitted with his summary judgment response have no bearing on whether the whole process was available to him. According to Mr. Martin, his grievances were rejected due to his abuser status. The challenged grievances could not be construed as showing that Mr. Martin failed to exhaust before filing suit.

20b.  Second, the challenged grievances did not come to light until merits summary judgment briefing. If Mr. Martin created the challenged grievances specifically to defeat that motion—as all the evidence suggests—he did so at a point in the case where the exhaustion defense could no longer harm him.

20c.    In sum, the exhaustion defense either has no bearing on the likelihood that the challenged grievances are authentic or lends additional support to the theory that Mr. Martin created them after receiving the summary judgment briefing.

21.    Overall, the Court finds that Mr. Martin is not a credible witness.

21a.    As noted above, Mr. Martin has not offered any plausible explanation that would cause the Court to conclude that the grievances challenged by Defendants are authentic.

21b.    Mr. Martin's demeanor during the evidentiary hearing also detracts from his credibility. Throughout the hearing, Mr. Martin interrupted, spoke over, and argued with the Court. *See, e.g.*, dkt. 165 at 18:2–19:6, 69:1–16, 87:10–88:1. He avoided opposing counsel's questions and offered his own, unresponsive arguments. *See, e.g.*, *id.* at 38:13–22.  His demeanor displayed anger and hostility, and the substance of his testimony was bereft of any coherent, factually supported explanation for the authenticity of his grievances. *See generally id.* at 132:9–138:5.

## E.    Mr. Martin Submitted False Grievances at Summary Judgment

22.    The Court finds by a preponderance of the evidence noted above, and in light of the additional considerations discussed below, that Mr. Martin created false grievances dated September 7 and 10 and attached them to his summary judgment response. *See* dkt. 98 at 20–24.

23.    Further, Mr. Martin presented these false grievances alongside the returns he received for the true September 7 and 10 grievances to give the

appearance that the defendants had knowledge of the issues underlying his claims. *Id.*

24.    Mr. Martin created the false grievances and attached them with his true grievance returns for the purpose of creating a material factual dispute that would avoid summary judgment.

### IV. Findings of Fact: Post-Hearing Allegations

25.    With his post-hearing brief, Mr. Martin filed an affidavit alleging widespread misconduct by the defendants, their counsel, and witnesses they called at the evidentiary hearing. Dkt. 168 at 15–20.

25a.    Mr. Martin attests that, on January 22, 2025, he encountered Ashlynn Gonthier while waiting to be transported from one building at the prison to another.

25b.    Mr. Martin attests that Ms. Gonthier (i) apologized for testifying falsely at the evidentiary hearing, (ii) stated that another defense witness testified falsely during the hearing, (iii) discussed her interactions with defense counsel after Mr. Martin filed his lawsuit, (iv) discussed notes and e-mails she received about the plumbing issues underlying Mr. Martin's lawsuit, (v) stated that Mike Ellis, IDOC Litigation Liaison, told her all records of those notes and e-mails were lost during the change in the electronic records system, (vi) admitted that she communicated with defense counsel and witnesses through personal e-mail and phone accounts (presumably to keep those communications out of discovery), (vii) said she would like to correct her false testimony under oath to set a good example for her daughter, even if it meant losing her job, but could

not risk jail time, (viii) encouraged Mr. Martin to request additional discovery so he could uncover damning communications from personal e-mail and phone accounts, (ix) complimented his performance at the evidentiary hearing, and (x) identified another witness who would offer testimony beneficial to Mr. Martin if called to testify.

26.    The defendants responded with video, photographs, and declarations rebutting Mr. Martin's allegations. Dkts. 175, 176, 177, 178. The three videos are from three different cameras showing three different locations in one building. None of the three show Mr. Martin and Ms. Gonthier in the same location at the same time.

26a.   The first video, labeled Exhibit F, is 3:18 long. It begins with two staff members—identified as Officer Jessica Richardson and Legal Coordinator Jeremiah Hall—escorting Mr. Martin down a hallway. At 0:35, they open a door and exit the hallway. Mr. Martin is not visible on this video after 0:36, and Ms. Gonthier is not visible at all.

26b.   The second video, Exhibit G, is 2:40 long. The camera is in a corner and shows two hallways coming together. One ends with an exterior door. At 0:08, Mr. Martin, Officer Richardson, and Mr. Hall come through the other side of the door they exited in the previous video. A screen shot from the surveillance system shows that this occurred about 2:40:57 P.M. *See* dkt. 175-4 at ¶ 14. Then, they pass under the camera at 0:20 on the video.

26c.   In the second video, Ms. Gonthier appears outside the exterior door at 1:33 on the video, enters the hallway, and then passes under the camera at 01:41.

Neither Ms. Gonthier nor Mr. Martin is visible for the remainder of this video. A screenshot from the surveillance system shows Ms. Gonthier just inside the exterior door at 2:46:47 P.M. Dkt. 175-4 at ¶ 20. This frame aligns with 1:37 on the video. Taken together, the video and screenshot show that Ms. Gonthier entered the hallway at about 2:46:43 P.M., exited the camera's view about 2:46:51 P.M., and was never in this hallway at the same time as Mr. Martin.

26d.   The third video, Exhibit H, is 0:58 long. It shows another exterior door and a desk area. Ms. Gonthier enters the frame at 0:41 on the video, walks directly to the exterior door, and exits as the video ends at 0:58. Mr. Martin is never visible in this video. A surveillance screen shot time-stamped 2:47:41 P.M., dkt. 175-4 at ¶ 23, aligns with 0:44 on the video. Taken together, the video and screenshot show that Ms. Gonthier entered the frame about 2:47:38 P.M., exited about 2:47:59 P.M., and was never in this location at the same time as Mr. Martin.

26e.   In sum, Mr. Martin and Ms. Gonthier were in the same building at the same time. But no video or photographic evidence shows them together. And, considering all the video and pictures, Ms. Gonthier was in the building and off camera only from about 2:46:51 P.M. (when she exited the video in Exhibit G) until about 2:47:38 P.M. (when she entered the video in Exhibit H). Therefore, she could have been with Mr. Martin for, at most, about 47 seconds.

26f.   In addition to the video and photographic evidence detailed above, Ms. Gonthier and Officer Richardson also attest definitively that the discussion Mr. Martin describes did not happen. Dkt. 175-1 at ¶ 5; dkt. 175-2 at ¶ 6.

27.    Mr. Martin's supplemental response does not contradict the defendants' evidence.

27a.    Mr. Martin asks the Court to question the authenticity and integrity of the surveillance video with no credible explanation for doing so. Dkt. 179 at 2.

27b.    Mr. Martin states that the declarations filed by the defendants contain false statements, but he does not identify which statements are allegedly false. *Id.*

28.    The Court finds by a preponderance of the evidence that Mr. Martin's statements in the post-hearing affidavit are false, and that Ms. Gonthier did not make the statements or admissions Mr. Martin attributes to her. First, the Court approaches Mr. Martin's affidavit with skepticism, given that he created and submitted false evidence in this case and that his testimony at the hearing was not credible.  Second, the picture and video evidence undermine Mr. Martin's affidavit.  That evidence shows that Mr. Martin and Ms. Gonthier were not together long enough to have the expansive conversation that Mr. Martin describes in his affidavit. Accordingly, there is no need to have an additional evidentiary hearing to resolve the conflicting affidavit testimony. *Cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . The Court of

Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

### V. Findings of Fact: History of Sanctions and Filing Restrictions

29.    Mr. Martin has been sanctioned with filing restrictions for misconduct three times in the past: Twice by the U.S. District Court for the Northern District of Indiana, and once by this Court.

30.    Mr. Martin has also had at least three cases dismissed for being frivolous or malicious or for failing to state a plausible claim for relief. Therefore, he is permanently barred from proceeding without prepaying the filing fee, except in limited circumstances.

### A.    2009 Northern District Restriction

31.    In *Martin v. York*, the Northern District dismissed Mr. Martin's case and ordered that he may not file any new civil cases for two years without prepaying the full civil filing fee. *Martin v. York*, No. 1:09-cv-00332-JTM-RBC, dkt. 5 (N.D. Ind. Dec. 21, 2009).

31a.    The Court found that Mr. Martin "misrepresented his financial status in an attempt to deceive the court" and obtain leave to proceed without prepaying the filing fee. *Id.* at 1.

31b.    Specifically, the Court noted that Mr. Martin made a $350.00 payment to satisfy the filing fee for one of his many pending cases only days

before filing a sworn statement that he had no income but disability payments, which were insufficient to pay all his expenses. *Id.* at 1–2.

32.    The Court further noted that Mr. Martin attempted to avoid sanctions by attempting to demonstrate that some of his disability money was stolen from his car, directly contradicting previous sworn statements that he received no income and did not own a car. When pressed, Mr. Martin changed his story and stated he was holding the money temporarily for somebody else. *Id.* at 2.

33.    The Court in *York* made clear that the filing restriction wasn't imposed because Mr. Martin made one false representation in one case. Rather, the sanction was based on multiple instances of intentional misconduct occurring over several cases.

33a.   The Court dismissed *Martin v. Fort Wayne Police Dept.* as a sanction for Mr. Martin's repeated refusal to participate in discovery. *See* No. 1:04-cv-00450-TLS-RBC, dkt. 56 (N.D. Ind. Nov. 21, 2005).

33b.   The Court also dismissed the later but identically titled *Martin v. Fort Wayne Police Dept.* as a sanction for attesting first that he had no income or assets and then that he had disability money stolen from his car. No. 1:09-cv-00154-RL-RBC, dkt. 4 (N.D. Ind. June 17, 2009).

34.    *York* was the fourteenth civil case Mr. Martin filed in the Northern District and the eleventh he filed between February 2008 and November 2009. One, *Martin v. Teusch*, No. 1:09-cv-00321-TLS-RBC, continued from its filing in November 2009, through the two-year restriction period, and

concluded with a jury trial in June 2013. The Court even appointed counsel to represent Mr. Martin through the final stages of the case. *Id.*, dkt. 221 (N.D. Ind. Feb. 11, 2013).

35.    Between January 2011 and May 2012, Mr. Martin filed another *fifteen* cases in the Northern District, nearly all of them against the Fort Wayne Police Department.

**B.    2019 Southern District Filing Restriction**

36.    In August 2019, this Court issued an incrementally more severe sanction by implementing a two-year filing restriction because Mr. Martin "once again attempted to defraud the Court." *Martin v. Fowler*, No. 1:18-cv-00992-JRS-DML, dkt. 65 at *1 (S.D. Ind. Aug. 7, 2019).

36a.    Mr. Martin falsely represented in a motion for assistance recruiting counsel that he had never brought another case pro se. *Id.* at *3.

36b.    Judge Sweeney observed that Mr. Martin had, at that point, filed over 50 cases pro se between the Northern and Southern Districts and found that he intentionally omitted those cases from his motion in hopes that the Court would not consider his extensive litigation experience when weighing whether or not to seek an attorney for him. *Id.* at *3–4.

37.    The Court ordered that Mr. Martin could not file *any* papers in new or existing civil cases until he paid all outstanding filing fees, which at that time totaled $4,950.00. The Court further ordered that he could not seek to have the filing restriction lifted for two years. *Id.* at dkt. 65.

38.    Like the Northern District, the Court made clear that this sanction was not the consequence of a single instance of misconduct.

38a.    Less than a year earlier, this Court dismissed a case in which Mr. Martin sued prison officials for $33.3 million for preventing him from litigating other cases. He stated that one case in this Court had been dismissed and that he missed critical deadlines in a state-court case, both due to the defendants' wrongdoing, even though the dockets in the respective cases showed that neither was true. *Martin v. Zantecky*, No. 1:18-cv-02443-JRS-MPB, dkt. 8 (S.D. Ind. Oct. 9, 2018).

38b.    In that order, the Court explicitly warned Mr. Martin that he would be sanctioned with a filing restriction "if he makes another false statement in this Court." *Id.* at *5.

38c.    In dismissing *Fowler* and implementing the new filing restriction, the Court explained:

> The Court considered lesser sanctions, but they would not be effective because: 1) previous dismissals and lesser filing restrictions imposed by the Northern District of Indiana have not stopped Mr. Martin's deceptive litigation practices; and 2) Mr. Martin proceeds in forma pauperis, such that no monetary sanction would have an impact. [. . .] The Court also considered—and will again consider in the face of any future willful false statements from Mr. Martin—referring such false statement(s) for prosecution of perjury. For now, however, the sanctions imposed will protect the Court's resources and other parties from Mr. Martin's abusive litigation practices and willful dishonesty.

*Fowler*, No. 1:18-cv-00992-JRS-DML, dkt. 65 at *5 (S.D. Ind. Aug. 7, 2019).

**C.    2021 Northern District Filing Restriction**

39.    In April 2021, the Northern District sanctioned Mr. Martin with a filing restriction coextensive with the 2019 restriction issued in this Court.

40.    In *Martin v. Redden*, Mr. Martin tried to avoid summary judgment by filing a signed and dated grievance document giving the appearance that he appealed the denial of a grievance.    No. 3:18-CV-595-JD-MGG, 2021 WL 1535299, at *2 (N.D. Ind. Apr. 19, 2021).

40a.    In reality, the document was produced in discovery in a different case and never included Mr. Martin's signature or the date. Mr. Martin added those features to the Bates-numbered document and filed it in *Redden*, where the defendants recognized its inauthenticity and moved for sanctions. *Id.*

40b.    Noting Mr. Martin's previous misconduct and sanctions in Indiana's federal courts, the Northern District dismissed *Redden* and ordered that he could not file papers in any civil case until all outstanding federal court filing fees were paid. *Id.* at *5. The Court reasoned:

> The conduct at issue here—falsifying a document to make it appear as if he filed a grievance appeal and exhausted his administrative remedies when he did not—is even more egregious than the previously sanctioned conduct. Given the egregious nature of the conduct and Martin's history of false statements, a severe sanction is warranted.

*Id.*

41.    The Seventh Circuit affirmed both the dismissal of Mr. Martin's case and the filing restriction. Specifically, the Court of Appeals found that the sanctions imposed were reasonable and necessary because:

Martin's conduct in this case and others cannot be tolerated. [. . .] Simply dismissing Martin's case, given that it was doomed to fail on the exhaustion defense he was trying to evade, would have been no sanction at all. [. . .] The point of a *Mack* bar is a severe sanction that denies access to the federal courts for civil remedies, even if those remedies are sought for meritorious claims. We fully recognize that the dismissals and the *Mack* bar were severe sanctions. That's why courts do not impose them lightly. They should be imposed only when less severe sanctions have not been or appear unlikely to be sufficient deterrents to continued abusive or frivolous litigation. The severe sanctions here were appropriate given Martin's egregious behavior, his history of litigation misconduct, and the fact that prior sanctions (including a separate *Mack* bar in another court) had not deterred him from lying.

*Martin v. Redden*, 34 F.4th 564, 568–69 (7th Cir. 2022).

## D.    Three Strikes

42.    It also appears that Mr. Martin has filed three or more cases while incarcerated that have been dismissed for being frivolous or malicious or for failing to state a claim. *See* 28 U.S.C. § 1915(g). They include:

42a.    *Martin v. Zantecky*, No. 1:18-cv-02443-JRS-MPB, dkt. 8 (S.D. Ind. Oct. 9, 2018) (dismissing case pursuant to 28 U.S.C. § 1915A(b)(1) as factually frivolous).

42b.    *Martin v. Gilmore*, No. 2:22-cv-00470-JRS-MKK, dkt. 32 (S.D. Ind. Oct. 27, 2023) (granting defendants' motion to dismiss case for failure to state a claim because all otherwise plausible claims were untimely); *see Cannon v. Newport*, 850 F.3d 303, 307–08 (7th Cir. 2017) ("Because all his claims are [time-] barred, he has incurred four strikes under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), one for each complaint and one for each appeal.").

42c.    *Martin v. Ledford-Gonthier*, No. 2:23-cv-00404-MPB-MJD, dkt. 8 (S.D. Ind. Oct. 3, 2023) (dismissing claims pursuant to § 1915A(b)(1) for failure

to state a claim); *id.* at dkt. 24 (S.D. Ind. Mar. 18, 2024) (granting defendants' motion to dismiss remaining claims for failure to state a claim because they were untimely).

43.    Whether Mr. Martin has officially accrued three "strikes"—and is therefore barred from proceeding without prepaying the full civil filing fee—is a determination the Court must reach in each newly filed case. *Hill v. Madison Cnty., Ill.*, 983 F.3d 904, 906 (7th Cir. 2020) (The "toting up of 'strikes'" is left "to a later tribunal."). Nevertheless, it appears likely that, moving forward, Mr. Martin will only be able to proceed without prepaying the filing fee in cases where he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### E.    Pending Cases

44.    Mr. Martin managed to pay his $4,950.00 in unpaid filing fees, and this Court vacated his filing restriction on August 17, 2022. *Fowler*, No. 1:18-cv-00992-JRS-DML, dkt. 95 (S.D. Ind. Aug. 17, 2022).

45.    Since that time, Mr. Martin has filed 27 civil rights lawsuits. Many originated in sprawling lawsuits that the Court severed into multiple actions.

46.    Twenty-three of Mr. Martin's civil rights lawsuits remain pending as of this order.

47.    Only ten of the twenty-three cases have ripe summary judgment motions on file.[1]

48.    Four of the twenty-three cases are still in discovery.[2]

## VI. Conclusions of Law

49.    Mr. Martin is subject to sanctions under this Court's inherent sanctioning authority because he "willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776.

49a.   This conclusion is based on the Court's finding, by a preponderance of the evidence, that Mr. Martin created two falsified grievances and filed them with grievance returns that were issued by prison staff in response to grievances he actually submitted on other topics. *See* Findings 15–17 above.   Then, Mr. Martin submitted those falsified documents to the Court, representing them as authentic.

49b.   This abuse was willful. Mr. Martin has never argued, much less presented evidence to support, that he mixed up grievances and returns or filed the wrong documents by mistake. Rather, he maintains, in the face of voluminous contrary evidence, that the challenged grievances are authentic.

---

[1] In addition to this case, *see Martin v. Donovan*, No. 2:23-cv-00058-MPB-MKK; *Martin v. Wellington*, No. 2:23-cv-00083-JRS-MJD; *Martin v. Bonner*, No. 2:23-cv-00267-JMS-MG; *Martin v. Clarke*, No. 2:23-cv-00282-JMS-MJD; *Martin v. Donovan*, No. 2:23-cv-00405-JMS-MKK; *Martin v. Yarber*, No. 2:23-cv-00409-JMS-MG; *Martin v. Woods*, No. 2:23-cv-00416-MPB-MKK; *Martin v. Bedwell*, No. 2:23-cv-00511-MPB-MJD; *Martin v. Rhoton*, No. 2:23-cv-00506-MPB-MG; and *Martin v. Simmerman*, No. 2:23-cv-00515-JPH-MKK.

[2] *See Martin v. Vanihel*, No. 2:23-cv-00501-JRS-MKK; *Martin v. Simmerman*, No. 2:23-cv-00512-JRS-MG; *Martin v. Simmerman*, No. l2:23-cv-00513-JRS-MG; *Martin v. MHM Health Prof'ls*, No. 2:24-cv-00092-MPB-MJD.

49c.   Further, there is no good faith explanation for Mr. Martin's conduct. He cited the fraudulent documents as the basis for a factual dispute to avoid summary judgment. The inescapable conclusion is that Mr. Martin attempted to use fraudulent evidence to obtain a favorable ruling.

49d.   The Court did not consider Mr. Martin's history of litigation sanctions as evidence that his filings were false. However, his history of sanctions is relevant to the Court's determination that he acted in bad faith. In *Redden,* Mr. Martin altered a grievance document and filed it in opposition to a summary judgment motion. *See* Findings 35–36 above. The Northern District imposed harsh sanctions for that conduct. Three years later, Mr. Martin again has submitted fraudulent grievances to oppose summary judgment. This demonstrates that the sanctions imposed in *Redden* did not have their intended effect, i.e., stop Mr. Martin from engaging in abusive conduct.

50.   Mr. Martin's conduct in this case warrants the sanction of dismissal of this case with prejudice. By opposing summary judgment with falsified evidence, Mr. Martin "'abused the judicial process by seeking relief based on information that the plaintiff knows is false.'" *Ramirez*, 845 F.3d at 776 (quoting *Secrease*, 800 F.3d at 401).

51.   Mr. Martin's record of prior abuse and sanctions, however, warrants the imposition of additional sanctions beyond dismissal of this case.  Mr. Martin has a long history of abusive litigation tactics, and he has responded to progressive judicial sanctions by escalating—rather than correcting—his misconduct. Indeed, that pattern is evident within this case, given Mr. Martin's

filing of a false affidavit *after* an evidentiary hearing to determine whether he falsified documents. To be effective, sanctions imposed in this case must be more severe than the sanctions the Northern District imposed in *Redden. See Zielinski*, No. 21-3042, 2022 WL 2115300, at *1; *Secrease*, 800 F.3d at 402; *Donelson*, 931 F.3d at 569 (proportionality of sanctions depends in part on "the ineffectiveness of lesser sanctions.").

512a.    Mr. Martin insists that the defendants conjured their allegations of fraud in this case from thin air and that they have drawn on his history of sanctions to torpedo his credibility and achieve dismissal of meritorious claims. *See, e.g.*, dkt. 165 at 132:11–137:17; *see generally* dkt. 168.

51b.    Mr. Martin's position is not supported by the record.  The Court's finding that Mr. Martin submitted fraudulent grievance documents to avoid summary judgment is based entirely on the evidence the parties presented. *See* Part III above. To the extent the Court has considered credibility, it has considered *only* whether the parties' assertions and the witnesses' testimony are credible in the light of other evidence in the record and, in Mr. Martin's case, based on his demeanor at the evidentiary hearing—not based on reputation or past misconduct. *See* Findings 18, 19, 22, 23, 25, 30.

51c.    As a matter of law, however, the Court must consider Mr. Martin's history of sanctions—and his history of continued misconduct after being sanctioned—in determining how to respond appropriately to his fraudulence in this case. *Donelson*, 931 F.3d at 569; *Secrease*, 800 F.3d at 402.

51d.  In *Redden*, the Northern District sanctioned Mr. Martin by dismissing the case with prejudice and banning him from filing any papers in any civil case (except habeas corpus actions) for two years. As a practical matter, that functioned as a dismissal of his two other pending cases, which he could not effectively litigate without filing papers. *See Redden*, 34 F.4th at 568.

51e.   A Court-wide filing ban would not necessarily result in the dismissal of all Mr. Martin's pending cases in this instance. Following the dismissal of this case, Mr. Martin will have 22 open civil rights cases, 18 of which will be past discovery. In some, Mr. Martin has already responded to summary judgment motions. In any case that survives summary judgment, Mr. Martin could present his case to a trier of fact without filing papers.

51f.   The possibility that some of Mr. Martin's remaining cases could proceed to trial illustrates the potential inadequacy of a filing ban alone. Mr. Martin has given the Court no reason to believe he will refrain from making false statements or presenting fraudulent documents during a trial, even if he cannot file papers with the Court. It will be all the more difficult to identify and remedy such misconduct in real time, and misconduct during a trial directly harms jurors in addition to the Court and opposing litigants. Further, Mr. Martin does not appear to have the financial means to hire an attorney, and the Court cannot resolve these concerns by appointing an attorney to represent him. This Court is called upon to be a careful steward of the limited resource that volunteer attorneys represent, *Watts v. Kidman*, 42 F.4th 755, 763–64 (7th Cir. 2022), and

appointing counsel to represent litigants who cannot be trusted to present their own cases with integrity runs counter to that mission.

51g.   A two-year, Court-wide filing restriction also would not amount to a two-year interruption in Mr. Martin's litigation and may not amount to a real interruption at all. If 18 cases continue despite a filing restriction, there is a reasonable likelihood at least some will continue through the expiration of a two-year ban.

51h.   And, most obviously, the two-year restriction implemented in *Redden* did not have the desired effect of curbing Mr. Martin's abusive litigation practices. To the contrary, he committed essentially the same fraud three years after he was sanctioned. *See* Conclusion 49d above.

52.   The Court concludes that Mr. Martin's three strikes and inability to proceed without prepaying the filing fee, *see* Part V(D) above, does not significantly mitigate against the need for more serious sanctions than have been issued in Mr. Martin's previous cases of abuse.

52a.   Under § 1915(g), Mr. Martin may continue to bring as many cases as he can pay for. Although he has proceeded *in forma pauperis* in his recent cases in this Court, he raised funds to pay off his past filing fees and achieve rescission of his filing restriction. Therefore, if he can continue to raise funds, his three strikes are irrelevant.

52b.   If Mr. Martin cannot prepay the filing fee, he can still proceed *in forma pauperis* upon an adequate showing that he is under imminent danger of serious bodily injury. If anything, Mr. Martin's three strikes may *encourage*

33

further fraud on the Court by incentivizing him to assert false allegations of imminent danger and then develop evidence to support them after the fact.

53.    For these reasons, the Court concludes that the following sanctions are warranted by the egregiousness of Mr. Martin's misconduct in this case, *Greviskes*, 417 F.3d at 759, and that lesser sanctions are unlikely to deter Mr. Martin from committing similar misconduct in the future, *Donelson*, 931 F.3d at 569.

53a.   This case is **dismissed with prejudice.**

53b.   Mr. Martin will pay the defendants and their counsel all costs of litigating the motion for sanctions, including all certified mailing costs required to send service copies and other correspondences to Mr. Martin. *See* dkt. 167 at 12. The defendants will have **fourteen days** from the issuance of this order to file a bill of costs.

53c.   Mr. Martin is banned from filing papers in any civil case in this District for **three years** from the date of final judgment in this action *and* until he has paid the defendants the costs authorized in Conclusion 48b and paid all outstanding filing fees and fines owed to *any* federal court. This restriction does not apply to (i) appeals, (ii) habeas corpus cases, (iii) any documents necessary to respond to a bill of costs in this case, or (iv) any documents necessary to pursue an appeal in any case. If he has not yet paid his outstanding fees, Mr. Martin may move to have the restriction rescinded or modified after three years

have passed. *See Mack*, 45 F.3d at 186 ("Perpetual orders are generally a mistake.").[3]

54d.  The Court hereby recommends to the Chief Judge of this District that *all* Mr. Martin's civil cases—excluding any habeas corpus cases—be dismissed with prejudice. This is an unusual—but not unprecedented—sanction.[4] In previous cases, the implementation of a filing restriction and the dismissal of a smaller number of cases have not succeeded in deterring Mr. Martin from making false statements or presenting false evidence after his restrictions were lifted. It is evident both from Mr. Martin's voluminous filings and from his statements in this litigation that he places the utmost value on his freedom to pursue his rights in this Court, even if he does not consistently treat

---

[3] The Court selects a three-year, as opposed to a two-year, ban because the previously-imposed two-year restrictions implemented failed to deter fundamentally identical misconduct in this case. *Donelson*, 931 F.3d at 569.

[4] *See, e.g.*, *Henderson v. Frank*, No. 19-CV-264-JDP, 2024 WL 1282783, at *5 (W.D. Wis. Mar. 26, 2024) ("Henderson is an experienced and relatively sophisticated pro se litigant who has filed 23 cases in this court and 8 in the Eastern District of Wisconsin, with most of those coming in the last several years. . . . I previously sanctioned him for repeatedly filing lawsuits naming dozens of defendants concerning multiple unrelated series of events . . . . These sanctions have not deterred Henderson from making baseless accusations and false statements in these cases. . . . I will dismiss all of Henderson's cases in this court—the above-captioned four cases, as well as his two other pending cases in which he has not raised his false allegations of evidence tampering."); *Lindsey v. Schneider*, No. 19-CV-1057-JDP, 2020 WL 1862857, at *3 (W.D. Wis. Apr. 14, 2020) ("Lindsey also has two other cases . . . . Once the court of appeals issues a mandate remanding those cases to this court, I will dismiss them with prejudice as a further sanction for Lindsey's misconduct in this case."); *Lindsey v. Johnston*, No. 18-CV-398-JDP, 2018 WL 6606241, at *1 (W.D. Wis. Dec. 17, 2018) ("Lindsey has engaged in serious, intentional misconduct that threatens the integrity of the judicial process. The previous sanction of having a case dismissed did not deter his deceitful conduct. A more severe sanction is warranted: all of his cases pending in this district will be dismissed with prejudice.").

his litigation seriously from an ethical perspective. *See, e.g.*, dkt. 165 at 41:5. The Court perceives that the dismissal of 23 cases and the inability to engage in any significant litigation for three years will be a substantial punishment for Mr. Martin and may be the only form of punishment that has a chance to finally impress upon him that he is not free to bring cases in federal court and then litigate them based on false statements and fraudulent evidence.

### VII. Conclusion

The defendants' motion for sanctions, dkt. [106], is **granted** for the reasons discussed in Part III. The Court imposes the following sanctions for the reasons discussed in Part V:

a.    This case is **dismissed with prejudice**

b.    Mr. Martin will pay the defendants and their counsel all costs of litigating the motion for sanctions, including all certified mailing costs required to send service copies and other correspondences to Mr. Martin. The defendants will have **fourteen days** from the issuance of this order to file a bill of costs.

c.    Mr. Martin is banned from filing papers in any civil case in this District for **three years** from the date of final judgment in this action *and* until he has paid the defendants the costs authorized in Conclusion 53b and paid all outstanding filing fees and fines owed to *any* federal court. This restriction does not apply to (i) appeals, (ii) habeas corpus cases, or (iii) any documents necessary to respond to a bill of costs in this case, or (iv) any documents necessary to pursue an appeal in any case. If he has not yet paid his outstanding fees, Mr.

Martin may move to have the restriction rescinded or modified after three years from the date of this order.

d.      The Court hereby recommends to the Chief Judge of this District that all Mr. Martin's civil cases—excluding any habeas corpus cases—be dismissed with prejudice.

The defendants' motion for summary judgment, dkt. [84], is **denied as moot**. The **clerk is directed** to enter **final judgment** and to docket a copy of this order in each of Mr. Martin's pending civil lawsuits in this District. A list of those cases is attached as Exhibit 1 to this Order.

**SO ORDERED.**

Date:  3/27/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

ANTHONY MARTIN
945288
WABASH VALLEY – CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

Jacob Paul Zurschmiede
Office of Indiana Attorney General
Jake.Zurschmiede@atg.in.gov

Hon. Tanya Walton Pratt, Chief Judge